Hand-Delivered

FILED
CHARLOTTE, NC

JUN 30 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-cr-168-KDB |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| **BRIAN SHANE HAIGLER** | ) | Violations: 18 U.S.C. § 1343 |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES:**

At the specified times and at all relevant times:

1. From at least as early as February 2019 through at least December 2021, in the Western District of North Carolina and elsewhere, Brian Shane Haigler ("HAIGLER") engaged in a scheme to defraud various individuals, his church, and the federal government through materially false, fraudulent and/or misleading statements, representations, deceptive half-truths, and/or omissions.

2. HAIGLER's scheme to defraud unfolded in three ways:

    a. HAIGLER began by recruiting and defrauding victim-investors, including friends, social acquaintances, and individuals from his church, making false, fraudulent, and/or misleading statements, representations, deceptive half-truths, and/or omissions, including that the loan proceeds would be used to fund purported real estate transactions. Instead of using the money as promised, HAIGLER used at least some of the fraudulent proceeds for personal expenditures and to make Ponzi-style payments to prior investor-victims.

    b. About five months later, HAIGLER also started defrauding his church, Victim-Church 1, embezzling money from Victim-Church 1 to make Ponzi-style payments to victim-investors and for personal expenditures.

    c. HAIGLER then expanded his scheme still further in early 2021, defrauding the Small Business Administration ("SBA") by fraudulently obtaining a loan through the EIDL program – in the name of Victim-Church 1 and without its knowledge or consent – and using the proceeds for his own personal benefit.

3. Through his scheme to defraud, HAIGLER fraudulently obtained more than $1.5 million (including money used for Ponzi-style payments), with more than a $1 million from victim-investors, approximately $389,000 from Victim-Church 1, and approximately $300,000 in loans obtained from the Small Business Administration's EIDL program in the name of Victim-Church 1.

1

## Participants and Related Entities

4.  HAIGLER was a resident of Mint Hill, North Carolina, within the Western District of North Carolina.

5.  Victim-Church 1 was a religious entity in the Western District of North Carolina for which HAIGLER served as Treasurer. In that role, he had authority over Victim-Church 1's bank accounts. Following the death of the pastor of Victim-Church 1 in early 2019, HAIGLER was the sole signatory on Victim-Church 1's bank accounts.

## The CARES Act and EIDL Program

6.  On March 13, 2020, President Donald J. Trump declared an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act in response to coronavirus disease 2019 ("COVID-19"). On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the SBA, to administer the emergency relief.

7.  One of the programs expanded by the CARES Act was the EIDL program, which was an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

    a.  EIDL proceeds could only be used for working capital to alleviate economic injury caused by the disaster (related to the COVID-19 pandemic) occurring in the month of January 2020 and continuing thereafter.

    b.  EIDL funds were issued directly from the United States Treasury, and an applicant applied through the SBA via an online portal. In the electronic application, the applicant certified that all of the information in the application was true and correct to the best of the applicant's knowledge and was warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties. The application also stated that the SBA relies upon the self-certifications in the EIDL application in determining whether the applicant was eligible for an EIDL.

    c.  The EIDL application process collected information concerning the business and the business owner, including information regarding the business' gross revenue for the 12-month period preceding the disaster, which for COVID-19 was defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; the number of employees employed by the business at the time of the disaster; information as to the criminal history of the business owners; and information regarding anyone that assisted in the preparation of the application.

## The Investment Fraud

8. HAIGLER's scheme to defraud began, in or about February 2019, with him recruiting victim-investors, including friends, social acquaintances, and individuals from his church and making false, fraudulent, and/or misleading statements, representations, deceptive half-truths, and/or omissions, including that the loan proceeds would be used to fund purported real estate transactions, to induce the victim-investors to loan or invest money with HAIGLER.

9. In furtherance of his scheme, HAIGLER often provided victim-investors documents that purported to set out the terms of the financial agreements, but often included false and/or misleading statements. For example, HAIGLER provided loan agreements indicating that:

   a. An investor would invest a certain dollar amount with HAIGLER.

   b. HAIGLER would use the funds for the purchase of real property at a particular location.

   c. The investment would be conditioned upon terms, including that HAIGLER would return proceeds of a specified amount to the investor, for example a "flat 10% return," by a date certain.

10. HAIGLER would sign the loan agreements, usually transmitting them back to the victim-investors electronically.

11. HAIGLER would then direct the victim-investors to write a check or to wire their investment and/or loan funds to either HAIGLER's personal account or a business account which HAIGLER controlled.

12. As part of the fraudulent scheme, and contrary to the representations made to victim-investors, the victim-investor money was not used as specified in "loan agreements." Rather, a significant amount of victim-investor funds was used by HAIGLER for personal expenditures and to make Ponzi-style payments to prior victim-investors.

13. When victim-investors tried to obtain the promised returns and/or the return of their initial investment from HAIGLER, HAIGLER would make additional materially false, fraudulent and/or misleading statements, representations, deceptive half-truths, and/or omissions in an attempt to explain his inability to make the payments and lull the victim-investors.

14. In total, from in or about February 2019 through in or about December 2021, HAIGLER defrauded more than ten victim-investors out of more than $1 million.

## Embezzlement from Victim-Church 1

15. In approximately July 2019, HAIGLER expanded his scheme by embezzling from Victim-Church 1's bank account, so that he could continue to make Ponzi-style payments to his investor-victims and make personal expenditures.

16. As part of the scheme, HAIGLER withdrew cash from Victim-Church 1's account and wrote checks on the account that were made out to either himself or to "cash." He would then deposit the embezzled money into his personal bank account.

3

17. In one example:

    a. On or about August 1, 2019, HAIGLER wrote a check from Victim-Church 1's bank account in the amount of $160,000 made payable to "Brian Haigler."

    b. HAIGLER then deposited the $160,000 into his personal bank account.

    c. The next day, on or about August 2, 2019, HAIGLER used the majority of the $160,000 he took from Victim-Church 1 to make a Ponzi-payment of $150,000 to Investor-Victim C.W.

18. In total, from in or about July 2019 through in or about December 2021, HAIGLER wrote 53 checks and made three cash withdrawals from Victim-Church 1's bank account, depositing approximately $389,000 of Victim-Church 1's funds into his personal bank account.

### Fraudulently Obtained EIDL in the Name of Victim-Church 1

19. In or around April 2021, HAIGLER further expanded his fraud scheme, using the SBA's electronic portal to submit an EIDL application for a $311,000 EIDL in the name of Victim-Church 1, without Victim-Church 1's knowledge or consent.

20. Among other things, HAIGLER fraudulently represented the proceeds of the EIDL would be used "solely as working capital to alleviate economic injury caused by the disaster in the month of January 31, 2020."

21. On or about April 20, 2021, the $311,000 in EIDL proceeds was deposited into Victim-Church 1's bank account.

22. On or about April 21, 2021, HAIGLER transferred $300,000 from Victim-Church 1's bank account to his own bank account. HAIGLER then used the EIDL proceeds to purchase property unrelated to church and for his personal benefit.

### Discovery of HAIGLER'S Fraud Scheme

23. In or about March 2022, HAIGLER admitted to the then pastor of Victim-Church 1 that he had sought and obtained the EIDL in the name of Victim-Church 1.

4

Case 3:25-cr-00168-KDB-SCR    Document 1    Filed 06/30/25    Page 4 of 6

## COUNT ONE

## 18 U.S.C. § 1343
### (Wire Fraud Scheme)

24. The United States Attorney realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 23 of the Bill of Information, and further alleges that:

25. From at least as early as July 2019 through in or about December 2021, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**BRIAN SHANE HAIGLER**

with the intent to defraud, did knowingly and intentionally devise the above described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, and for the purpose of executing such scheme and artifice to defraud, did cause to be transmitted by means of wire communication in interstate commerce any writing, signal, or sound, to wit, the defendant, while located in Mecklenburg County, North Carolina, did send or cause to be sent electronic communications, including emails and wire transfers, to various individuals, the SBA, and financial institutions and their intermediaries, in other States.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

26. Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Information; and

    b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

27. The following property is subject to forfeiture on one or more of the grounds stated above:

    a. A forfeiture money judgment in the amount of at least $1 million such amount constituting the proceeds of the violations set forth in this Bill of Information.

RUSS FERGUSON
UNITED STATES ATTORNEY

_____
MARIA K. VENTO
ASSISTANT UNITED STATES ATTORNEY

_____
ERIC FRICK
SPECIAL ASSISTANT UNITED STATES ATTORNEY

6